Good morning, Your Honors. I'm Philip Orowski for Connie Bloch, who's deceased, through Representative Ralph Lockhart. He's been substituted in, right? Ralph Lockhart. Yes. You know, you look a little like Joe Aliotta. I've been told that before, yes. I looked at his face once at a time, so... Well, I hope you don't hold that against me. Well, no, no, no. I know Joe's a good guy. He's got a damn good lawyer. So, Your Honors, we agree with the trial court, Judge Potter, that Ritz-Carlton Hotel Company, LLC, which is referred in the record as Ritz-Delaware, is subject to the general personal jurisdiction of California. There's no dispute about that. The issue is whether Ritz-Carlton Hotel Company, LLC, is an agent of Ritz-Carlton Hotel Company, Limited, which is referred to in the record as Ritz-Bermuda. Are you familiar with the December 1st Supreme Court case on Obsterson-Burker v. Sachs? Absolutely. I don't think that helps you. It doesn't hurt us, and I'll tell you why. The United States Supreme Court, I'm sure you're familiar with the history of that. In an embanked proceeding of the Ninth Circuit, the court found that there was jurisdiction under the Foreign Sovereign Immunity Act. And Justice Roberts, in the opinion of the Supreme Court, said that the Foreign Sovereign Immunities Act did not allow for the case to proceed in California because the action wasn't based on commercial activity. It was based on personal injury. And the only activity involved occurred in Austria. But the Supreme Court didn't address the question of agency because it said it didn't have to. I think it does have some analogous effect, even though it's not necessarily controlling. But all of Ms. Black's claims turn on the same tragic episode that happened in Dubai, allegedly caused by the wrongful conduct and dangerous conditions in Dubai, which led to injuries that were suffered in Dubai. And the argument that would be made here is that Ms. Black's procurement of a reservation in California is no more related to her injury in Dubai than Sachs' purchase of a Europass in the United States was related to her accident in Austria. Much more than that, Your Honor. This is completely different than the Sachs case. We have the Ritz-Carlton Hotel that goes to enormous effort to present to the public the concept of a single enterprise, that as we reference in our brief and it's set forth in the excerpt of record, which I'll go into a little bit more specifically in a minute, that all the Ritz-Carlton Hotels is one and the same. They're headquartered in Maryland. And there is no way that a customer of the Ritz-Carlton Hotel would know, as Ms. Black, for instance, would know that the Ritz-Carlton Hotels that she stayed in in California were any different as far as its management than the Ritz-Carlton Hotel in Dubai. And that's because the Ritz-Carlton Hotel went to great efforts to lead everybody to believe that. So that's completely different. What you're saying is it's almost like a McDonald's franchise, is it? It's more than that. You know, I mean, it's not just a franchise. It's an actual single enterprise. As far as the Ritz-Carlton leads the public to believe, it's all part of the same company. Well, I guess what seems odd to me here is, I mean, you have to make some very difficult jurisdictional arguments. You know, why didn't Ms. Black sue the Marriott International, the parent corporation? Well, the Ritz-Carlton Hotel is where she stayed. I mean, this is not part of their record. And so forgive me if I'm going beyond the record, but I just want to be honest in answering your question. We have a case against the Ritz-Carlton in Maryland because they said that's where the headquarters is. That case is pending. I don't know what the court's ultimate jurisdictional decision will be on that. There was a preliminary decision that Ritz-Carlton Hotel Company Limited, which is Ritz-Bermuda, which defendants say is different than Ritz-Carlton Hotel Company LLC, which is Delaware. Preliminarily, the federal judge in Maryland says there is jurisdiction, but we're going to have an evidentiary hearing on that. But the answer to your question is we sued here in California because she believed and we believed that the Ritz-Carlton was operating in California, which they are, which they admit, Ritz-Carlton Hotel Company LLC. I think you have to be more specific when you say they admit. Who admits that it was operating in California? Ritz-Carlton Hotel Company LLC, Ritz-Delaware. Let's call it Ritz-Delaware. All right. And Ritz-Delaware doesn't own the Dubai Hotel, right? Ritz-Carlton apparently doesn't own any hotels. They operate the hotels. That's what I'm getting at. So usually, I mean, you're talking about a dangerous premises condition case, right? Yes. And that's usually asserted against either the property owner, right, or the lessee of the property. Well, it's perfectly appropriate to sue. Isn't that the usual? Yeah, but this is not usual because we're suing the Ritz. That's why we're here. So the question is, you know, how can you reach the person who's not the owner of the real property? That's what you're trying to do. No, we're not. We don't have to do that. What are you doing? We're suing the operator of the hotel. Of the website. No, we're suing Ritz-Carlton Hotel Company, LLC, and Ritz-Carlton Company, LTD Limited, on the basis that they're agents of each other. They're ostensible agents. I'll get to that more precisely in a minute. And they're part of a single enterprise. Okay, even if we were to determine that R.C. Delaware acted as an agent for R.C. Bermuda and operating a website in California, how does Ms. Black's claims arise out of or related to R.C. Delaware's activities in California? Your Honor, they don't have to if they're agents of each other. If I could just take a moment. I want to answer all of your questions, but I want to make sure that I make the points that I think I'm obligated to make to do my job. So if you look at the courts. Actually doing your job is answering our questions. I'm sorry? Actually doing your job is answering our questions. Yeah, but I thought I should do more than that. I mean, I thought it was my responsibility to do more than that. You're starting to sound more like Joe Alioto. Okay. It's a good idea to answer the questions. Okay, well, if I've left any— You can involve it in whatever you're doing. Yeah, I mean, I do want to answer your questions. If there's any questions that I haven't answered, I will. I do like Joe. That's a great question, Your Honor, that you answered. Let's see. This is how the trial court in— I'm looking at ex sub record of 15 and 16, which is Judge Carter's opinion. Judge Carter, in his opinion, granted the motion to dismiss the claim against Ritz-Carlton Hotel Company, LLC, which is Ritz, Delaware, and ordered that we should refile the case against Ritz-Carlton Hotel Company, limited in the appropriate jurisdiction, without deciding what the appropriate jurisdiction is. We're not asking the court, this court, to decide what the appropriate jurisdiction is. We're saying that we have—California has jurisdiction because Ritz-Carlton Hotel Company, LLC, which is the Delaware entity, is the agent of Ritz-Carlton Hotel Company, LTD, which defendants assert is the Bermuda entity. And now what I'd like to do is just explain why the court's reasoning justifies that conclusion, although it didn't reach that conclusion. So looking at page—excerpt of record 15, under the heading ostensible agency. This is Judge Carter's decision. Alternatively, the plaintiff argues that the court may assert personal jurisdiction over RC Bermuda because an ostensible agency relationship exists between RC Bermuda and RC Delaware. And then he quotes, an agency is ostensible when the principal intentionally or by warrant of care causes a third person to believe another to be his agent who is not really employed by him. A principal is bound by acts of his agent under a merely ostensible authority to those persons only who have in good faith and without want of ordinary care incurred a liability or part with value upon the faith thereof. There are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent. The person dealing with the agent must do so with belief in the agent's authority, and this belief must be a reasonable one. Such belief must be generated by some act of neglect or the principal sought to be charged. And third, relying on the agent's apparent authority must not be— and the third person in relying on the agent's apparent authority must not be guilty of negligence. But even if—let's say—let's assume just for purposes of argument that Judge Carter was wrong on the ostensible agent issue. Don't you still have to show that Ms. Black's claims arise out of or relate to R.C. Delaware's activities in California? Well, they were because they— Well, tell me how. That's what—I don't know that I disagree with you on the ostensible agent, but I'm still struggling with—I don't see how they relate to R.C. Delaware's activities in California. Because R.C.—because Ritz-Carlton can't function without R.C.— they manage the website, they control the reservation system. They're an integral part of the entire Ritz-Carlton hotel enterprise. If this were reservation damage, that might be one thing, but it's a premise's liability that all occurred. No, but we're talking about—for purposes of agency and jurisdiction, you don't have to show—we don't have—it's not our burden to show Ritz-Carlton, Delaware, created the dangerous condition in Bermuda, the tripping hazard, that caused Ms. Black serious injuries. We just have to show, under the case authorities that we've discussed in the brief, that they're part of a single enterprise. They're agents of each other, either actually or on an ostensible basis, so as to make it reasonable and fair for a California court to have jurisdiction over them. And it's a prima facie standard. You know, have we made a prima facie case that Ritz-Carlton, holding itself out as a single enterprise, which it does, as we—which is set forth in the website and its whole marketing program, and I don't know if you've ever stayed at Ritz-Carlton, but I won't get into evidence there, but they make—they go to great efforts to make it seem like it's a seamless, single enterprise. Now, if that is so, and they're agents of each other, then according to the California authorities that we cited, I mean the federal authorities and the California authorities, there is sufficient contact with California under an agency relationship between Ritz-Carlton Hotel Company Limited, the Bermuda enterprise, and Ritz-Carlton Hotel Company, LLC, at least on a prima facie standard, to impose—to allow a California court to exercise jurisdiction. And the fact is, the truth is, that Ritz-Carlton did everything it could to lead everybody to believe that went to the hotel that they're all one enterprise. They don't—you don't hear Ritz-Carlton saying, oh, look, this is Ritz-Carlton Hotel Company Limited, this is Ritz-Carlton Hotel Company, LLC. There'd be no way a reasonable customer could figure that out. So—and let me just finish that quote that I was about to—that I was reading. And again, this is from Judge Carter. While the ostensible authority of an agent cannot be based solely upon the agent's conduct, the principal need not make explicit representations regarding the agent's authority to the third party before ostensible authority can be found. Ostensible authority—and this is the point that I want to make, that I'm trying to make. Ostensible authority may be proven through evidence of the principal's representations to the public in general. And then if you—you know, if you look at the way Ritz-Carlton markets itself, and if you look at the website, which is in ER 159, there'd be no way a customer would know there'd be any difference in the management of one Ritz-Carlton as opposed to another. You know, I'm—I hope I'm not being too passionate. I want to make sure I don't leave any questions unanswered, so. I've got six seconds left. I want to— No, you don't want to go to Dubai. I'm sorry? You don't want to go to Dubai. I have other places to go. So if you don't have any questions, I'd like to have maybe one minute for rebuttal. That's up to our presiding judge. All right, so we'll give you a minute. Okay, thank you. Good morning, Your Honor. Good morning. Rob Ryder on behalf of the respondents, who I will refer to in this as Ritz-Carlton Delaware and Ritz-Carlton Bermuda, just for clarity. There's also indications in the record of Ritz-Carlton Dubai, and I think that that is something that has caused some confusion in the briefing about—that that's not an entity. There is no Ritz-Carlton Dubai. Ritz-Carlton is a brand name, like McDonald's, that's used in a number of places, and the hotel in Dubai is owned by Mohammed Saeed Abdullah and Sons, LLC, an entity of the United Arab Emirates. So that is the hotel owner. What Ritz-Carlton Bermuda does, pursuant to the agreements produced in the record, Ritz-Carlton Bermuda is a party to only one contract, and it's a party to the contract with the owner. That contract has nothing—it allows Ritz-Carlton Bermuda to operate that hotel overseas. Ritz-Carlton Bermuda is an overseas company that operates no hotels within the United States. Its mandate is for overseas hotels. The only connection between Ritz-Carlton Delaware and Bermuda is that they have the same parent, Marriott. I think the case law that's been well briefed for the court conclusively establishes that that's not enough of a linkage. You can't hold affiliates, parents, subsidiaries responsible. There has to be—they are, in fact, separate entities. You can't— But doesn't that partly depend on what each entity does and does for the other? It does. Or does for the single enterprise? It does. The Bermuda company doesn't have contact with the website. The contract for the website is between the owner of the property and Ritz-Carlton Delaware, and that is not—it's not strictly a contract for the website. If you look at the agreement that's in the record, it says that it has access to the reservation system of Ritz-Carlton. It has access to, I think, another computer system that allows them to internally track the hotel. That's in that 2.4 section. Yeah, but they hold themselves out to the world as one unit. I don't— They do. They do. You know. I mean, if you know how it works, you'll know that their properties are owned separately, and they operate under one brand, and maybe their business is not so good, so then they get another brand at another time. But unless you have some knowledge of that, some experience, you'd think that— you'd think that, you know, all the Hilton hotels are owned by one company, but they're owned separately. Separate owners, and they have contracts with them. Your Honor, that's a great question, and I'm glad you asked it. Oh, thank you. Taking a page from Mr. Aliotto. The ostensible agency theory in this case fails for a number of reasons. First of all, this case is almost on all fours with the DeGhese case versus Plant Hotel, which was another Marriott case in Aruba. The only connection alleged to the U.S. was that Marriott ran a website that you could get reservations there, and the court in that case said that's not enough. The ostensible agency has to create an actual and reasonable belief in the mind of the person believing it that an agency is created. There's nothing on the website that says Rich Carlton is an agent for any of the overseas hotels, and I would submit to the court that it's not reasonable for people in the U.S. The Rich Carlton website did nothing more than Yelp, in fact, less than Yelp, Kayak, TripAdvisor, any other system that ties into the Marriott or Rich Carlton or Hilton reservation system. It simply gives a listing of hotels. It'll show pictures. It'll state the amenities, but there are no guarantees on the website, and Plaintiff, in fact, has not testified to relying on any such guarantees. In fact, she gave the exact same testimony that they gave in the Seghese case, that she just relied on it for general conditions. It's a good property. I don't believe it's a reasonable belief for us in the U.S. to believe that a U.S. company, a Delaware company, can control worldwide operations. I think when you go particularly to a company like the People's Republic of China or the United Arab Emirates or places that have significantly different legal systems, significantly different customs, I don't think that it's reasonable. I don't think ostensible agency is created by someone simply believing that the U.S. controls the world. Well, I think it's reasonable to believe, for instance, that Marriott controls all the Marriott hotels. Isn't that a reasonable inference to draw from everything Marriott does? I mean, you go to a Marriott hotel in Hong Kong and you still get your Marriott points, right? And if you've got enough points, you get a big suite. It's all, you know, the same treatment in all these hotels, and it's all run out of, is it Salt Lake or somewhere else now? Anyway, you know, I mean, Marriott, it's reasonable to believe Marriott controls the whole thing, isn't it? I don't think that's believable. I believe it. I believe it, too. I found out. Why isn't that reasonable? Because, Your Honor, I think the ostensible agency requires more than that. More than what? More than simply the brand name. And I believe that there's cases— It's more than the brand name. I mean, they, for instance, you know, they control the, whatever the call is, you know, the preferred customer point program, right? Correct, they do. Huh? You know, they, it's almost like a franchise. You know, they tell them what kind of soap to use. But that's not from interaction with the website. That's from the contract— No, but it's interaction indirectly with the entity that owns the website and operates the website. It's the same thing. Just because that entity operates the website, that doesn't mean that's all they do. But there's no evidence in the record that Delaware does anything else than operate a website, just like Kayak, just like TripAdvisor. The thing that gets you to the point is— To the ordinary person out there, they just think it's one big entity. You know, one big happy family. I don't think that's a reasonable belief to have, Your Honor, for the reasons I've stated about other countries' values, legal systems. Then they have to have a little disclaimer. So Ritz-Carlton, unaffiliated with the rest of the Ritz-Carlton, yeah. Well, let me ask you if the entry had something to do with the reservation. It did not, and I think— But just assume, for the purpose of this question, that we held that R.C. Delaware acted as R.C. Bermuda's agent. If, when Ms. Black arrived at the Ritz-Carlton Dubai, the hotel refused to honor her reservation or charged her a greater amount, and she therefore sued R.C. Bermuda in California, would the district court have jurisdiction then if it related to the reservation? It would not. R.C. Bermuda does not have any contract with the website. The contract with the website is Almuda & Sons. R.C. Bermuda has no direct contact with R.C. Delaware at all, other than being a subsidiary company. Would that create an agency relationship with the hotel? That's a different question, not before us today. The Bermuda does not own the hotel. It simply manages the operations in the hotel. But I think that the court, in looking at—I had to practice the name—OBB Foreign for Kecker— Right. —versus AG— The recent Supreme Court case. The recent Supreme Court case, which is unanimous, Justice Roberts, even though they didn't specifically get to the agency issue, I think that their view of the case under the subject matter jurisdiction at issue there is very instructive here, and I think the court has focused on it. There is nothing about the website here that has anything to do with a Ramadan curtain in a hotel in Dubai. There's no representation on the website that you're not going to see any Ramadan curtains there during Ramadan. That is a specific act of the individual property that has nothing to do with the website, even if somehow Bermuda owned the hotel, which it doesn't. Well, I mean, you seem to be arguing that Ritz-Carlton could never be responsible for anything here, but I'm not sure that I buy that. But I do think that the recent Supreme Court case talks something about that there's got to be some sort of connection with where the injury occurs to what, if there is an ostensible agency existing, it would be for the reservations, perhaps, which I'm curious how you would make that argument. I would also indicate to the court that she didn't make a reservation through the reservation system. Right. The claim here is that a person read the website, didn't reserve through the website, but somehow relied on the website to go talk to a travel agent to get the travel agent to make the reservation. So we have an even farther stretch here. Well, no. I mean, she learned about it, and then she went to a traveler. You can't blame her for that. But I think that that touches on something Justice Roberts said in this opinion is, and I recognize he was talking about subject matter jurisdiction, but he said that we should not be able or we should not allow artful pleading to get around a legal requirement. And if the court goes in the direction that the plaintiff wants them to go, essentially isn't... What's artful here? Claiming that she read a website. Basically, it allows any person anywhere in the U.S. to say, I read that website of that company, therefore, even though there's no other contact with California other than that website, simply because I read it, hold them liable here. That's what the plaintiff's asking for in this case. And I don't think we can go there. We're going to be the court of the world. And... Mr. Ryder, can you add anything to what Mr. Borowski told us about the status of the Maryland action? All I know is that it is at issue. It's being defended through a firm other than mine who asked us for copies of our briefing. I gave that to them. As far as I know, the reason for that is basically a mistake that was made in the record. The paralegal who supplied the declaration initially, as to Bermuda, initially said the principal place of business was in Maryland. That was not true. The principal place of business is in Bermuda. It was corrected in the declaration. Plaintiff was given time to do jurisdictional discovery in this case, which they did not do. They didn't challenge that. So as far as I know, that's kind of what's going on there. For the reasons stated, I think that the argument here, I wasn't quite sure what all would be argued. But it seemed to come down to ostensible agency, and I think we've talked about that. I would also argue that as far as Ritz-Delaware, the motion to dismiss was granted there. And again, focusing on the OBB case, I'll call it, and Judge Carter's discussion there, there is no evidence that Delaware controlled anything in Dubai. There's no evidence of wrongful conduct on the part of Delaware. And getting to the court. What about the restated operating agreement? I didn't ask the appellant about this, but if we accept the veracity of that agreement, what evidence is there contrasting that to allegations that R.C. Delaware had any responsibility for the maintenance of the Ritz-Dubai? R.C. Delaware is not a party to that contract. That contract is between Mohammed Saeed Al Muda and Sons, LLC, and Ritz-Carlton Bermuda, two overseas entities contracting overseas. And in fact, the other contract at issue in this case also does not name Delaware. That is a contract between the hotel owner and IHLC, International Hotel Licensing Corporation, which is a Luxembourg company based in Switzerland. So both of those contracts were entered into overseas. Neither one of those contracts makes any reference to Ritz-Carlton Delaware, although I think there is a reference to being part of the reservation system. I don't think it says anything about going on the website or making representations on the website, but it does talk about being part of the reservation system and being part of the system for tracking what goes on in the hotel, the hotel operating system of some kind, two computer programs essentially. So with that, I would say that Judge Carter spent a long time on this. He had it under submission a long time, and I thought his opinion was excellent. Not just because it went for us, but I think it was very well reasoned, very well thought out, and I would urge that he be affirmed. Thank you, Your Honor. And thank you for your service, sir. Thank you. If I may just take one minute, like I said before, and I'll answer any questions if you want to give me more time. But first of all, I'd like to... Think into the microphone, would you? Oh, yes. I'm sorry. I'd like to... Because I know Justice Callahan was concerned about the Sachs case, when you consider what you're going to do with this appeal, you might look at Section 3 of the Supreme Court decision where... You're talking about that Austrian railway case? Yes, the one Justice Callahan asked me about. All right. Go ahead. The court specifically said that the argument about agency was forfeited because it wasn't raised below. So if you... You know, it's on pages 9 and 10 of the decision. If you're concerned about Sachs being in conflict with my arguments, I think if you consider that part of the decision, you'll see that there is no conflict. The other point is the restated operating agreement specifically... We've argued ostensible agency because we think that's the easiest basis for reversal based on a prima facie standard. But there's also an actual agency, as you can see, when you review the restated operating agreement that has been the subject of your questions, where on pages 14... That's excerpts of record 200.6. Excuse me. And excerpts of record 200.10. That's pages 14 and 18 of the operating agreement. They say that Ritz-Carlton standards... Ritz-Carlton means the standards of construction, furnishing, and equipping applicable to other hotels comparable to the hotel and operated by the operator or its affiliates pursuant to Ritz-Carlton's rights. And then on paragraph 2.5 on page 18, excerpt of record 200.10, 2.50, it restates that the standards of operations and care will be just as... They'll be the same all over. So that's part of the single enterprise concept. You've been very patient with me. I want to answer any questions if you have any. Your time's up. Okay. Thank you very much. I appreciate it. Thank you. Thank you. It's a pleasure to have you both here. Thank you. Thank you.
judges: Pregerson, Tashima, Callahan